# UNITED STATES DISTRICT COURT
### for the
## WESTERN DISTRICT OF NORTH CAROLINA

### Asheville Division

| | | |
|---|---|---|
| The Estate of William I. Allison, deceased | ) | |
| | ) | |
| by and through Susan W. Allison, | ) | |
| | ) | |
| Personal Representative of the Estate, | ) | |
| | ) | Civil Action No. 1:09 CV 468 |
| Plaintiff | ) | |
| | ) | **Complaint for Negligent Wrongful** |
| | ) | |
| v. | ) | **Death** |
| | ) | |
| Vince Scoggins, P.A. and James J. | ) | |
| | ) | |
| Bombenger, MD and Shelby Emergency | ) | |
| | ) | |
| Associates, P.A., | ) | |

### Defendants

The Plaintiff, complaining of the Defendants, says:

### The Parties

1. William I. Allison, date of birth September 6, 1954, died on April 25, 2008 as hereinafter described. Hereinafter Mr. Allison will be referred to as the decedent and/or Mr. Allison as the context shows. At the time of Mr. Allison's death he was a citizen and resident of Gaffney, Cherokee County, South Carolina and was married to Susan W. Allison also a citizen and resident of Gaffney, Cherokee County, South Carolina where they owned their home and maintained their residence. After Mr. Allison's death, his widow Susan W. Allison on July 11, 2008 opened the Estate in the Office of the Probate Court of

1

Cherokee County, South Carolina in Estate File number 2008 ES 1100223 as appears of record and said court appointed Susan W. Allison as the Personal Representative of the Estate in the State of South Carolina. Thereafter, as appears of record, on December 22, 2009, the Clerk of Rutherford County, North Carolina (the county of residence of the defendant Scoggins) appointed Susan W. Allison as the Ancillary Personal Representative in North Carolina in Estate File Number 09 E 619 pursuant to the provisions of Chapter 28A and specifically North Carolina General Statute 28A-26-3. Hereafter Susan W. Allison will be referred to as "Mrs. Allison" or the "Personal Representative" of the Estate of William I. Allison as the context shows. Mrs. Allison as Ancillary Personal Representative of the Estate is therefore authorized pursuant to Chapter 28A of the North Carolina General Statutes, including but not limited to N.C.G. S. 28A-18-2; 28A-26-5 and 6 to bring this action for the Wrongful Death of Mr. Allison in this Court.

2. Upon information and belief the plaintiff alleges that the defendant Vince Scoggins, P.A., is a citizen and resident of Rutherfordton, Rutherford County, North Carolina. Hereafter this defendant will be referred to as "defendant PA Scoggins". It is further alleged upon information and belief: that defendant PA Scoggins was and still is a Physician Assistant licensed by the State of North Carolina as a physician assistant; that at all times relevant to this action the defendant PA Scoggins was an employee of the defendant Shelby Emergency Associates, P.A.; and that with respect to his care and treatment of Mr. Allison on or about April 24, 2008 while Mr. Allison was a patient in the emergency department of the Cleveland Regional Medical Center (hereafter CRMC) located in

2

Shelby, North Carolina (CRMC), the defendant PA Scoggins was working under the license and supervision of the defendant Dr. James J. Bombenger. Therefore by operation of law, any and all liability of the defendant PA Scoggins is also attributable to the defendant Dr. James J. Bombenger and/or the corporate defendant Shelby Emergency Associates, P.A, without further foundation or proof.

3. Upon information and belief the plaintiff alleges that the defendant James J. Bombenger, M.D. is a citizen and resident of Morganton, Burke County, North Carolina; is a doctor licensed to practice medicine in the State of North Carolina; and works at a hospital in North Carolina (to wit: CRMC) and at all times relevant to this action held himself out as a specialist in the field of emergency medicine. The defendant James J. Bombenger, M.D will hereinafter be referred to as "defendant Dr. Bombenger". It is further alleged upon information and belief that: defendant Dr. Bombenger was and still is an owner, shareholder, employee and/or agent of the North Carolina corporate defendant Shelby Emergency Associates, P.A. and therefore by operation of law any and all liability of the defendant Dr. Bombenger is also attributable to the corporate defendant Shelby Emergency Associates, P.A., without further foundation or proof.

4. Upon information and belief the plaintiff alleges: that the defendant Shelby Emergency Associates, P.A is a North Carolina Professional Association organized and registered as a corporate entity under the laws of the State of North Carolina and its charter appears of record in the Office of the Secretary of State of North Carolina; that said defendant maintains its principal place of business at the CRMC located in Shelby, Cleveland

County, North Carolina; and that said defendant is the sole and exclusive provider of emergency medicine doctors and physician assistants under a contract with CRMC for the time periods involved in this Complaint. Upon information and belief the plaintiff further alleges that the defendant Dr. Bombenger and the defendant PA Scoggins were owners, agents and/or employees of the defendant Shelby Emergency Associates, P.A and therefore any and all liability of the defendant Dr. Bombenger and the defendant PA Scoggins for their care and treatment of Mr. Allison on or about April 24, 2008 while Mr. Allison was a patient in the emergency department of the CRMC is also attributable to the corporate defendant Shelby Emergency Associates, P.A by operation of law without further foundation or proof.

## Jurisdiction and Venue

5. Pursuant to 28 USC 1332 Jurisdiction in this Court is by virtue of complete diversity of citizenship by and between the plaintiff and all of the defendants in that: Mr. Allison was a life long citizen and resident of the State of South Carolina; Mrs. Allison, individually and as Personal Representative and as Ancillary Administrator of the Estate, was and still is a citizen and resident of the State of South Carolina; Mr. Allison's Estate was opened and is pending under the jurisdiction of the South Carolina Courts (that is: Cherokee County, South Carolina Probate Court); the Ancillary Estate was opened in Rutherford County, North Carolina as North Carolina law requires that Wrongful Death Actions be pursued by the office of a North Carolina appointed Personal Representative, but said Ancillary Estate was opened pursuant to the provisions of N.C.G.S. 28A-26-3 which allows a non-resident domiciliary personal representative to be appointed by a North Carolina Clerk as the Ancillary Personal Representative in North Carolina for the purpose

4

of *inter alia,* pursuing a Wrongful Death Action in North Carolina in North Carolina State Court or the appropriate Federal Court; and both Mr. and Mrs. Allison owned their home place in Gaffney, Cherokee County, South Carolina. Regarding the defendants, as hereinabove alleged upon information and belief: both of the individual defendants, to wit: Mr. Scoggins and Dr. Bombenger, are citizens and residents of North Carolina; the defendant Shelby Emergency Associates, P.A is a North Carolina corporation, it maintains its principal place of business on the premises of the CRMC located in Shelby, Cleveland County, North Carolina; and the care that is alleged to have been negligent took place in the emergency department of the CRMC. This case involves the alleged Negligent Wrongful Death of Mr. Allison by these defendants and the amount in controversy exceeds the sum of $ 75,000.00 exclusive of interest, costs, and/ or attorney fees.

6. Venue is proper in this Court pursuant to 28 U. S. Code 1391 in that the alleged negligent care took place in the emergency department of CRMC located in Shelby, Cleveland County, North Carolina and upon information and belief it is alleged that defendant PA Scoggins resides in Rutherfordton, Rutherford County, North Carolina; the defendant Dr. Bombenger resides in Morganton, Burke County, North Carolina; and defendant Shelby Emergency Associates, P.A is a North Carolina corporation which maintains its principal place of business in Shelby, Cleveland County, North Carolina (to wit: at the CRMC).

### Allegations of Negligent Care

7. At the time of his death, Mr. Allison was a 53 year old long time resident of Gaffney, South Carolina and he was a well known and talented musician. At the time of his death,

5

Mr. Allison was employed by Bonitz Contracting Company working in the dry wall business. Mr. Allison had health insurance through Bonitz with Cigna. Mr. Allison was on medical leave at the time of his death from his work as a result of neck surgery performed by a Dr. Cavert McCorkle, a neurosurgeon practicing with Spartanburg Neurosurgical Institute, P.A. and located in Spartanburg, SC. Dr. McCorkle performed a C6-C7 posterior hemi laminectomy with the removal of multiple disc fragments on March 14, 2008 at Spartanburg Regional Medical Center in South Carolina. The surgery had gone well according to the surgeon and Mr. Allison's recovery was proceeding normally.

8. Upon information and belief the plaintiff alleges that Dr. McCorkle ordered Physical Therapy which was performed by Physical Therapist Joe McKowen of Physical Therapy, Inc. located in Gaffney, South Carolina; that Mr. Allison was seen for the first time on April 21, 2008 for the assessment; and that thereafter Mr. Allison was also seen on April 23 and on April 24.

9. Upon information and belief the plaintiff alleges that Mr. Allison left the April 24 physical therapy session wearing a patch applied by Mr. McKowen and that the patch was an IOMED patch which contained Dexamethazone Phosphate which is an anti-inflammatory steroid medication.

10. Upon information and belief the plaintiff alleges that Mr. Allison did not know what kind of medication was in the patch and Mr. Allison referred to the patch as a "pain patch".

11. Upon information and belief the plaintiff alleges that on April 24, Mr. Allison's brother Ray Allison had asked Mr. Allison to come to Ray Allison's home to let in an Appraiser. Ray Allison resided in his home place with his fiancée Yvonne Walker and Ms. Walker's children. Thus, after the April 24 PT session, William Allison drove to Ray Allison's home to allow the appraiser to enter Ray Allison's home place. The appraiser came and performed the appraisal and left.

12. Upon information and belief the plaintiff alleges that at around 4:00 pm, Ms. Walker's son Terry arrived home (that is: Ray Allison's and his mother's home place) from school and when he entered the home, he saw Mr. William Allison (who Terry referred to as "Uncle Bill") lying on the living room floor with a glass of water and his Uncle appeared to be ill, his speech was not normal, and he was very disoriented and confused. Terry asked Mr. Allison what was wrong and Mr. Allison said he was "hurting" and had been vomiting and that it felt better to lie on the floor. Mr. Allison asked Terry to get him a glass of ice water which Terry did and handed it to Mr. Allison.

13. Upon information and belief the plaintiff alleges that Terry then telephoned his mother (Ms. Walker) at her job and since this was near the end of Ms. Walker's work day, she drove straight home as soon as her work day ended. Upon arrival, Ms. Walker made the same observations as Terry and she noted that Mr. Allison was very disoriented but upon questioning by Ms. Walker, Mr. Allison explained that: he had been to the Physical Therapist earlier in the day; that he had been given what Mr. Allison described a "pain

7

patch"; and that Mr. Allison thought the patch had made him sick. Ms. Walker observed that: Mr. Allison did have on a patch and she pulled it off and placed the patch into a plastic baggy; that Ms. Walker did not note any writing on the patch; that Ms. Walker took the patch in the baggy to the CRMC and gave it to the defendant PA Scoggins as further alleged below; and that she and Mr. Allison told the defendant PA Scoggins that they did not know what medication was in the patch.

14. Upon information and belief the plaintiff alleges: that Mr. Allison was somewhat communicative and so Ms. Walker decided not to call 911 but rather to drive Mr. Allison to the CRMC hospital; that Mr. Allison was very unsteady on his feet so Ms. Walker had to help Mr. Allison walk to her car; that Ms. Walker then drove Mr. Allison to the CRMC; that during the drive to the hospital, Mr. Allison became nauseated and Ms. Walker had to pull over so Mr. Allison could vomit; and that upon arrival to the hospital Mr. Allison was still very disoriented and ill.

15. Upon information and belief the plaintiff alleges: that upon arrival to the Emergency Department of CRMC, Ms. Walker assisted Mr. Allison into the hospital Emergency Department and helped him to sit in the waiting area; that because Mr. Allison was so sick and disoriented, Ms. Walker gave to the staff Mr. Allison's administrative information; and that while going through the administrative processing, Mr. Allison again became nauseated and had to go to a bathroom where he vomited again.

16. Upon information and belief the plaintiff alleges: that Mr. Allison care was assigned to the defendants; that these defendants did undertake to provide a medical evaluation and

treatment of Mr. Allison; that the doctor-patient relationship was created and established by and between the defendants and Mr. Allison such that the defendants were obligated to provide care in accordance with the standards of practice as defined by North Carolina General Statute 90-21.12 and separately were obligated to exercise reasonable care and diligence as outlined by the North Carolina Supreme Court decision in *Wall v. Stout*, 310 N.C. 184, 311 S. E. 2d 571 (1984).

17. Mr. Allison was an insulin dependent diabetic. Upon information and belief the plaintiff alleges, as hereafter further alleged: that the symptoms Mr. Allison exhibited were classic symptoms of a diabetic patient suffering from a disorder of his or her blood sugar; that Ms. Walker informed the medical staff and defendant PA Scoggins that Mr. Allison was an insulin dependent diabetic; and that with respect to Mr. Allison, these defendants failed to provide care in accordance with the standards of practice and failed to exercise due care.

18. Upon information and belief the plaintiff alleges that Mr. Allison and Ms. Walker were taken to a room and two nurses interviewed Mr. Allison but because Mr. Allison was still so disoriented, very groggy, and nauseous Mr. Allison had a difficult time answering the nurses' questions so Ms. Walker answered some questions and/or she would ask Mr. Allison their questions to get him to respond. Ms. Walker explained that Mr. Allison had had neck surgery and had what Mr. Allison referred to as a "pain patch" given to him on April 24 at PT and that she (Ms. Walker) had taken the patch off because Mr. Allison thought that the patch was making him sick. Ms. Walker also reported to these nurses that Mr. Allison was an insulin dependent diabetic. Mr. Allison said he had taken his insulin

9

that day. Ms. Walker also reported her concern that Mr. Allison was very dehydrated because he had been vomiting a lot that day.

19. Upon information and belief the plaintiff alleges: that Mr. Allison was then seen by defendant PA Scoggins but during the entire time Mr. Allison was in the Emergency Department, he was not seen, examined, or assessed by a doctor or the defendant Dr. Bombenger; that during the visit by defendant PA Scoggins, Mr. Allison was still very disoriented, groggy, and feeling sick; that Ms. Walker reported to defendant PA Scoggins the concern that the patch might be the source of the problem but that neither Mr. Allison nor Ms. Walker knew what medication was in the Patch and that she had removed the patch earlier and placed it into a baggy which she gave to defendant PA Scoggins.

20. Upon information and belief the plaintiff alleges that Ms. Walker also reported to defendant PA Scoggins that Mr. Allison was an insulin dependent diabetic and that Mr. Allison had been vomiting and that he may be dehydrated.

21. Upon information and belief the plaintiff alleges that defendant PA Scoggins stated that he did not know what kind of medication was in the patch and said he would go talk to his supervisor or the pharmacy to try to find out what the medication was.

22. Upon information and belief the plaintiff alleges that on April 24 while Mr. Allison was in the ER of CRMC, defendant PA Scoggins identified the patch as an IOMED Patch and

made an effort to identify the medication in the patch by conferring with the CRMC pharmacist and/or the defendant Dr. Bombenger but neither one of them could identify the medicine and neither defendant PA Scoggins nor defendant Dr. Bombenger made an attempt to call PT McKowen to ask him what the medication was.

23. Upon information and belief the plaintiff alleges that defendant P.A Scoggins left the room and soon a nurse came and started an IV and hung a liter bag of fluid which was administered to Mr. Allison.

24. Upon information and belief the plaintiff alleges that neither defendant PA Scoggins nor defendant Dr. Bombenger ordered any labs at all and did not check Mr. Allison's blood sugar level; that Mr. Allison was given the liter of fluid and two medications, to wit: Toradol and Phenergan; and that Mr. Allison was discharged at 2140 (9:40 pm).

25. Upon information and belief the plaintiff alleges that: at the time of the discharge, Ms. Walker thought Mr. Allison was still groggy, disoriented, and still very ill and she thought Mr. Allison was in need of hospitalization; that Ms. Walker explained her concerns to defendant PA Scoggins; that by the time of the discharge no doctor had assessed Mr. Allison; that defendant PA Scoggins assured Ms. Walker that in his opinion, Mr. Allison had improved and it was safe to discharge him; that Ms. Walker and Mr. Allison trusted the advice of the PA and went along with the discharge without seeking additional care; that because of the time of evening, Ms. Walker took Mr. Allison to her home to spend the night (that is: the home of Ms. Walker and Ray Allison, Mr. William

11

Allison's brother); and that Ms. Walker wanted to be available to tend to Mr. Allison's needs, if necessary.

26. Upon information and belief the plaintiff alleges: that the next morning (April 25), Ms. Walker went to her work; that Mr. Ray Allison, who is a truck driver, was home that morning and he got up, made some coffee, and then called to his brother, William Allison; that when there was no answer, Ray checked on his brother and found his brother lying on the floor whereupon Ray immediately ran to his brother's side whereupon Mr. Ray Allison could tell that his brother was dead; that Ray then called 911 whereupon EMS arrived and thereafter transported Mr. William Allison back to CRMC where he was declared Dead on Arrival.

27. The local medical examiner ordered an Autopsy to be performed by the Office of the Medical Examiner of North Carolina. The Autopsy concluded that Mr. Allison's glucose level was 524 mg/dl and that Mr. Allison died of diabetic ketoacidosis.

28. In their care and treatment of Mr. Allison during the emergency room visit on the evening of April 24, 2008, the defendant PA Scoggins and/or the defendant Dr. Bombenger, acting within the course and scope of their employment and/or agency with the defendant Shelby Emergency Associates, P.A, were careless, negligent and acted below the standards of care in the care and treatment of Mr. Allison, in some or all of the following ways:

12

A.      The defendant PA Scoggins failed to use his best judgment; failed to exercise reasonable care and diligence in the application of his knowledge and skills; failed to possess and/or apply the degree of professional learning, skill and abilities which others similarly situated ordinarily possess; and failed to act in accordance with the standards of practice applicable to his profession with one of his training and experience situated in the same or similar communities in April 2008;

B.      The defendant Dr. Bombenger failed to use his best judgment; failed to exercise reasonable care and diligence in the application of his knowledge and skills; failed to possess and/or apply the degree of professional learning, skill and abilities which others similarly situated ordinarily possess; and failed to act in accordance with the standards of practice applicable to his profession with one of his training and experience situated in the same or similar communities in April 2008;

C.      The defendants failed to develop a differential diagnosis one of which should have included the possibility that Mr. Allison's blood sugar was abnormal;

D.      The defendants failed to order or to perform any testing of Mr. Allison's blood sugar. These defendants had been informed that Mr. Allison was an insulin dependent diabetic;

E.      The defendants failed to order or to perform any lab testing of Mr. Allison whatsoever;

13

F.   The defendant Dr. Bombenger failed to order the defendant PA Scoggins to perform testing of Mr. Allison blood sugar;

G.   The defendants negligently formulated their opinion that the cause of Mr. Allison's symptoms was the IOMED patch without ascertaining what medication was in the Patch and whether the medication may have had an impact on Mr. Allison's diabetes;

H.   The defendants negligently treated Mr. Allison's symptoms without carefully evaluating the cause of his symptoms and whether the cause of the symptoms was Mr. Allison's diabetes;

I.   The defendants negligently failed to evaluate Mr. Allison's neurological and metabolic symptoms;

J.   The defendants negligently discharged Mr. Allison without sufficiently assessing his medical condition;

K.   The defendants negligently discharged Mr. Allison without sufficiently assessing his medical condition and specifically failed to assess his blood sugar;

L.   The defendants negligently discharged Mr. Allison without sufficiently assessing his medical condition and specifically failed to assess whether his diabetes was the cause of his symptoms;

M.     The defendants negligently discharged Mr. Allison without sufficiently assessing his medical condition and specifically failed to assess whether the IOMED patch had adversely affected his diabetes;

N.     When Mr. Allison presented to the Emergency Department, the medical staff documented that Mr. Allison was groggy and disoriented but the defendants negligently discharged Mr. Allison without sufficiently assessing the cause of these symptoms and discharged Mr. Allison with instructions to take Phenergan and to continue his prescribed Xanax in that both medications cause sedation, drowsiness, and aggravate grogginess, such that upon taking these medications it is likely that Mr. Allison would have become very sedated, much more disoriented, and unable to summon help;

O.     The defendants negligently failed to talk to the Physical Therapist who gave Mr. Allison the patch to ascertain what medication was in the patch. As it turned out the patch contained a steroid called dexamethasone which can, but not necessarily does, adversely affect a diabetic patient's blood sugar. The defendants negligently failed to investigate what medication was in the patch such that the defendants made the assumption that the Patch was the cause of Mr. Allison's symptoms but made the assumption that by removing the Patch, the problem had resolved itself when in fact Mr. Allison's symptoms may have been coincidental to the utilization of the patch. Upon information and belief the plaintiff alleges that the defendants never considered the probability or possibility that Mr. Allison was

15

suffering an abnormality of his blood sugar which may have been related to the medication in the patch or may have been totally unrelated to the patch.

P.    The defendants negligently discharged Mr. Allison without adequately assessing whether the cause of Mr. Allison's problem was his insulin dependent diabetes.

Q.    The defendant PA Scoggins negligently failed to exercise reasonable care in that said defendant failed to consider that the cause of Mr. Allison's problem may have been his diabetes and failed to check Mr. Allison's blood sugar.

R.    The defendant Dr. Bombenger negligently failed to exercise reasonable care in that said defendant failed to consider that the cause of Mr. Allison's problem may have been his diabetes and failed to check Mr. Allison's blood sugar and/or negligently failed to order defendant PA Scoggins or the CRMC nursing staff to check Mr. Allison's blood sugar;

S.    The defendants and/or either or both of them, negligently failed to order the CRMC nursing staff to check Mr. Allison's blood sugar;

T.    The defendants and/or either of them, negligently failed to discuss with Mr. Allison and/or Ms. Walker whether Mr. Allison's diabetes was the cause of Mr. Allison's problem;

U.    The defendants and/or either of them, negligently failed to discuss with Mr. Allison and/or Ms. Walker whether Mr. Allison's diabetes was the cause of Mr. Allison's problem such that after discharge, Ms. Walker and/or Mr. Allison's

16

brother Ray, would know to periodically check on Mr. Allison during the nighttime such that they could monitor whether the Mr. Allison's symptoms had returned;

V.    The defendants and/or either of them, negligently failed to discuss with Mr. Allison and/or Ms. Walker whether Mr. Allison's diabetes was the cause of Mr. Allison's problem such that after discharge, Ms. Walker and/or Mr. Allison's brother Ray, would know to periodically check Mr. Allison's blood sugar during the nighttime.

29. Separately, the plaintiff alleges a common law negligence claim against these defendants in that:

A.  The defendant PA Scoggins failed to exercise reasonable care and diligence in the application of his knowledge and skill in that:

    i)  Said defendant failed to consider that the cause of Mr. Allison's problem may have been his diabetes;

    ii)  Said defendant failed to check Mr. Allison's blood sugar.

B.  The defendant Dr. Bombenger failed to exercise reasonable care and diligence in the application of his knowledge and skill in that:

    iii)  Said defendant failed to consider that the cause of Mr. Allison's problem may have been his diabetes;

    iv)  Said defendant failed to check Mr. Allison's blood sugar or failed to order same.

17

30. If these defendants had performed an adequate emergency room examination and developed a reasonable differential diagnosis which should have included Mr. Allison's diabetes, such emergency room examination would have revealed that Mr. Allison was suffering an abnormality of his blood sugar and appropriate treatment would have been administered and Mr. Allison would not have died.

31. As a direct and proximate result of the aforesaid negligence of these defendants, Mr. Allison died. But for said negligence, Mr. Allison would have received appropriate treatment, and his death would have been prevented.

**Damages**

32. The plaintiff incorporates herein by reference all previous paragraphs of this complaint.

33. Prior to his death, Mr. Allison was age 53; (date of birth: September 6, 1954) and was married to Susan W. Allison and was the father of the late Nichole Allison, his only daughter.

34. Mr. Allison, prior to his death, was a man who: was well known in the community as a talented musician and as a hard working person; was well loved and respected by those who knew him; and was a gentleman who possessed excellent habits, manifested an outstanding aptitude for the enjoyment of life and provided reasonable and cultured leadership and other talents to those so entitled. Mr. Allison had a life expectancy of approximately 26.8 years. The Estate is entitled to recover from the defendants a sum sufficient to compensate the Estate for the present monetary value of the descendant to

18

those so entitled during his normal life expectancy for: the net income after the deduction of his own living expenses; for the loss of his services, protection, care and assistance, society and companionship, security and comfort to his next of kin; for his funeral bills; and for all other damages allowed under the laws of North Carolina and particularly N.C.G.S. 28A-18-2(b), which is incorporated herein by reference as if fully set out, all in an amount that exceeds the sum of $75,000.00 exclusive of interest, costs, and/or attorney fess as the evidence shall show.

## Rule 9j Certification

35. The plaintiff incorporates herein by reference all previous paragraphs of this complaint.

36. As this matter is being filed in Federal Court based on the Diversity of Citizenship of the parties, the plaintiff is informed and believes that no Rule 9 j Certification as required by the North Carolina Rules of Civil Procedure is required. However, in the event that same is deemed to be required, the plaintiff certifies that she has had the medical care rendered by the defendants reviewed by a professional, reasonably expected to qualify as an expert witnesses under Rule 702 of the North Carolina Rules of Evidence and this expert witness is expected to testify that the care of these defendants rendered to Mr. Allison was substandard and that this substandard care proximately caused the death of Mr. Allison.

37. Additionally, this Certification is related only to those matters defined by said Rule 702 and Rule 9 of the North Carolina Rules and said Certification relates to those matters that

require said Certification; and the plaintiff notes that the plaintiff has also made allegations of common law negligence alleging that these defendants did not exercise reasonable care and diligence as defined in the North Carolina Supreme Court Case of *Wall v. Stout*, in their care of Mr. Allison and with respect to those allegations no such Certification is required.

WHEREFORE, the plaintiff on behalf of the Estate of William I. Allison respectfully prays the Court as follows:

1.    That TRIAL BY JURY be held on all issues;

2.    That judgment be entered against the defendants jointly and severally in an amount that exceeds the sum of $75,000.00 exclusive of interest, costs, and or attorney fess; and

3.    For such other and further relief as to the Court seems just and proper.

This the 28th day of December, 2009.

s/Michael R. Nash
Michael R. Nash
N.C. Bar Number 9972
Attorney for Plaintiff
Post Office Box 4578
Greensboro, NC 27404
Telephone: (336) 370-4144
Fax: (336) 370-1341
Email: mike@callnash.com

s/Thomas A. Killoren, Jr.
Thomas A. Killoren, Jr.
N.C. Bar Number 30455
Attorney for Plaintiff
Harrison White Smith Hayes & Coggins PC
Post Office Box 3547

Spartanburg, SC 29304
Telephone: (864) 585-5100
Fax: (864) 542-2993
Email: Tom@spartanlaw.com